IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

DAVID LEE RUSSELL,

    **Plaintiff,**

v.          Civil Action No. 5:15-CV-39

EDDIE ANDERSON,
REBECCA GROVE,
I. BRANNON,

    **Defendants.**

## REPORT AND RECOMMENDATION

### I. INTRODUCTION

On March 30, 2015, the *pro se* Plaintiff, David Russell, filed a civil rights complaint against three defendants concerning his medical care while incarcerated. ECF No. 1. The Complaint brings suit against the Defendants in their individual capacities pursuant to *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971). On July 13, 2015, the Plaintiff was granted leave to amend his complaint. ECF No. 15. On August 18, 2015, the Court granted the Plaintiff's Motion to pursue his initial complaint. ECF No. 19. Thereafter, the Plaintiff requested clarification of the status of his cases, and the undersigned attempted to do so on January 22, 2016. ECF No. 23. On February 10, 2016, the Plaintiff filed what purports to be an amended complaint. ECF No. 25. However, it is an exact duplicate his original complaint, with the only exception being the date signed.[1] On March 17, 2016, an Order to Answer was entered and summonses were issued. ECF Nos. 30, 31. On April 25, 2016, the Defendants filed a Motion to Dismiss

---

[1] In fact, it appears that the Plaintiff simply made a copy of his original complaint, deleted the original signature date of January 30, 2015, and replaced it with February 4, 2016.

or, in the alternative, Motion for Summary Judgment. ECF No. 39. A Roseboro Notice was sent to Plaintiff on April 26, 2016, notifying the Plaintiff of his right and obligation to file a response. ECF No. 41. The Plaintiff filed a response on August 9, 2016. ECF No. 50. Also pending is the Plaintiff's Motion to Appoint Counsel which was filed on August 9, 2016. ECF No. 51.

## II. MATERIAL FACTS [2]

The Plaintiff is a federal inmate confined at the federal correctional institution in Gilmer, West Virginia (FCI Gilmer). ECF No. 12-1 at 4. On August 8, 2013, the Plaintiff became light headed and experienced erratic breathing, difficulty balancing, nausea, and vomiting. *Id.* The Plaintiff informed a correctional officer of his symptoms who contacted the Health Services Department (HSD). *Id.* Because the Plaintiff was having difficulty walking he was transported from his housing unit to HSD in a golf cart operated by Defendant Grove. *Id.*

Once at HSD, Defendant Grove performed a series of blood pressure tests on the Plaintiff. *Id.* at 5. At 7:23 a.m. the Plaintiff's blood pressure was 197/122. *Id.* At 7:31 a.m. the Plaintiff's blood pressure was 178/119. *Id.* Defendant Grove informed Defendant Dr. Eddie Anderson that she believed the Plaintiff's blood pressure was dangerously high. *Id.* Defendant Anderson, an HSD physician, concurred with

---

[2] It should be noted that the Defendants have provided a narrative of facts which relies upon nearly 900 pages of medical records. Those records cover the Plaintiff's care predating his arrival at FCI Gilmer through at least March 15, 2016. The Defendants have also provided a six-page Declaration from Defendant Anderson which purports to summarize the Plaintiff's medical care without specific citation to the medical records. The undersigned has chosen not to expend his limited resources sifting through the medical exhibits in an attempt to support the Defendants' statement of facts. Instead, he has relied largely on the Plaintiff's statement of facts which is consistent with viewing the facts in the light most favorable to the nonmoving party.

Defendant Grove's opinion. *Id.* Defendant Anderson did not administer any new medication to the Plaintiff rather, he instructed him to return to his cell and take his already prescribed "anti-hypertensives." *Id.*

On his way to his cell, the Plaintiff encountered Defendant Bannon and requested a wheelchair; however, Defendant Bannon ignored his request. *Id.* The Plaintiff "continued, to stagger, groping the wall for support, until [he] was outside, where [he] began experiencing shortness of breath." *Id.* After approximately fifteen minutes Defendant Bannon went outside and informed the Plaintiff that Defendant Grove would transport him back to his housing unit. *Id.*

The Plaintiff arrived at his housing unit and was helped to his cell by two other inmates. *Id.* The Plaintiff continued to feel dizzy and began vomiting. *Id.* Other inmates notified a correctional officer of the Plaintiff's condition. *Id.* The correctional officer then contacted HSD. *Id.* He was transported back to HSD where further tests were performed. *Id.*

The tests indicated that the Plaintiff's blood pressure was 198/119 at 1:27 p.m., 197/117 at 1:27 p.m., 230/113 at 1:27 p.m., 210/110 at 1:34 p.m., 215/111 at 1:41 p.m., and 210/113 at 1:49 p.m. *Id.* An EKG test was also performed and "clonidine" was administered to stabilize the Plaintiff's blood pressure. *Id.* at 6. The Plaintiff was then transported to Stonewall Jackson Memorial Hospital. *Id.* The hospital staff determined that he was "suffering from poorly maintained hypertensive urgency in a malignant state, and [he] displayed indicative signs of transient ischemic attack." *Id.* He was released from the hospital on August 11, 2013.

It would appear that the Plaintiff alleges that as a result of the care he received at FCI Gilmer on August 8, 2013, he suffered hypertensive urgency in a malignant state, a transient ischemic attack, hospitalization, substantial weight loss, as well as physical and mental duress. For relief, he seeks compensatory damages in the amount of $10,000,00.00

### III. STANDARD OF REVIEW

#### A. Motion to Dismiss

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir.1992) (citations omitted). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. *Mylan Labs, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir.1993).

The Federal Rules of Civil Procedure "require[ ] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Courts long have cited the "rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [a] claim which would entitle him to relief." *Conley*, 355 U.S. at 45-46. Moreover, in *Twombly*, the United States Supreme Court noted that a complaint need not assert "detailed factual allegations," but must contain more than labels and

conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. Thus, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," to one that is "plausible on its face," rather than merely "conceivable." *Id.* at 555, 570. Therefore, in order for a complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." *Bass v. E.I.DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir.2003) (citing *Dickson v. Microsoft Corp.*, 309 F.3d 193, 213 (4th Cir.2002); *Iodice v. United States*, 289 F.3d 279, 281 (4th Cir.2002)). In so doing, the complaint must meet a "plausibility" standard, instituted by the Supreme Court in *Ashcroft v. Iqbal*, where it held that a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). Thus, a well-pleaded complaint must offer more than "a sheer possibility that a defendant has acted unlawfully" in order to meet the plausibility standard and survive dismissal for failure to state a claim. *Id.*

### B. Summary Judgment

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

Motions for summary judgment impose a difficult standard on the moving party; for it must be obvious that no rational trier of fact could find for the nonmoving party.

*Miller v. Federal Deposit Ins. Corp.*, 906 F.2d 972, 974 (4th Cir. 1990). However, the "mere existence of a scintilla of evidence" favoring the nonmoving party will not prevent the entry of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242-252 (1986). To withstand such a motion, the nonmoving party must offer evidence from which a "fair-minded jury could return a verdict for the [party]." *Id.* "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987). Such evidence must consist of facts which are material, meaning that they create fair doubt rather than encourage mere speculation. *Anderson*, 477 U.S. at 248. It is well recognized that any permissible inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986).

## IV. DISCUSSION

### A. Subject Matter Jurisdiction

The Defendants' brief sets forth the relevant standard for a motion to dismiss based on Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction. ECF No. 40 at 9. However, nowhere in the analysis is there a discussion or assertion that this Court lacks subject matter jurisdiction. Indeed, *Bivens* claims fall squarely within this Court's federal question subject matter jurisdiction. Therefore, the undersigned has made no further analysis of subject matter jurisdiction.

### B Qualified Immunity

The Defendants argue that "Federal executive officers and employee who are sued for constitutional torts may invoke the defense of qualified immunity." ECF No. 40

at 16 (citing *Butz v. Economou*, 438 U.S. 478 (1978)). This, however, is an incomplete reading of the law. Indeed, not all federal executive officers and employees are entitled to qualified immunity. Rather, "qualified immunity is available to officers of the executive branch of government, . . . dependent upon the scope of discretion and responsibilities of the office and all the circumstances as they reasonably appeared at the time of the action on which liability is sought to be based." *Scheuer v. Rhodes*, 416 U.S. 232, 247 (1974) *abrogated by Harlow v. Fitzgerald*, 457 U.S. 800 (1982).

The Defendants make no attempt to show that they exercised an appropriate amount of discretion or responsibility to be protected by qualified immunity. Nor do they cite any cases where similarly situated individuals were protected by qualified immunity. Therefore, the undersigned is unpersuaded by this argument.

**C.    Improper Defendant**

Title 42 U.S.C. § 233(a)[3] makes the FTCA the exclusive remedy for specified actions against members of the Public Health Service ("PHS"). In particular, it protects commissioned officers or employees of the PHS from liability for "personal injury, including death, resulting from the performance of medical, surgical, dental, or related functions" by requiring that such lawsuits be brought against the United States instead. The United States thus, in effect, insures designated public health officials by standing in their place financially when they are sued for the performance of their medical duties.

---

[3] 42 U.S.C. § 233(a) provides:

The remedy against the United States provided by sections 1346(b) and 2672 of Title 28 . . . for damage for personal injury . . . resulting from the performance of medical, surgical, dental, or related functions . . . by any commissioned officer or employee of the Public Health Service while acting within the scope of his office or employment, shall be exclusive of any other civil action. . . .

*Cuoco v. Moritsugu*, 222 F.3d 99, 109 (2d Cir. 2000). See also, *US v. Smith*, 499 U.S. 160, 170 n. 11 (1990) (42 U.S.C. § 233 is one of several statutes passed to provide absolute immunity from suit for Government medical personnel for alleged malpractice committed within the scope of employment); *Carlson v. Green*, 446 U.S. 14, 20 (1980) (Congress explicitly provides in 42 U.S.C.§ 223(a) that the FTCA is a plaintiff's sole remedy against PHS employees); *Apple v. Jewish Hospital and Medical Center*, 570 F. Supp. 1320 (E.D.N.Y. 1983) (Motion for dismissal of the action against the defendant doctor, a member of the National Health Corps. granted and the United States substituted as defendant, and case deemed a tort action). Therefore, pursuant to 42 U.S.C. § 233(a), Congress made proceedings under the FTCA the sole avenue to seek relief against any PHS employee for injuries resulting from the employee's performance of medical functions within the scope of his or her employment. The Supreme Court confirmed this rule in *Hui v. Castaneda*, by specifically holding that the immunity provided by §233(a) precludes a *Bivens* action against individual PHS officers or employees for harms arising out of constitutional violations committed while acting within the scope of their office or employment. *Hui*, 559 U.S. 799, 802 (2010).

Rebecca Grove is the Assistant Health Services Administrator at FCI Gilmer, and at all times relevant to this action, she was a Health Systems Specialist at FCI Gilmer. She is also a Commissioned Officer in the United States Public Health Service and was a Commissioned Officer at the time relevant to this complaint. ECF No. 40-11. Therefore, pursuant to 42 U.S.C. § 233(a), she is entitled to absolute immunity from

suit for all claims arising from the medical care she provided the Plaintiff on August 8, 2013 Plaintiff, and should be dismissed from Plaintiff's lawsuit.[4]

## C. Eighth Amendment

The Plaintiff argues that the Defendants violated his Eighth Amendment rights by failing to provide adequate medical care while in federal custody. To state a claim under the Eighth Amendment for ineffective medical assistance, the plaintiff must show that the defendant acted with deliberate indifference to his serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To succeed on an Eighth Amendment cruel and unusual punishment claim, a prisoner must prove: (1) that objectively the deprivation of a basic human need was "sufficiently serious," and (2) that subjectively the prison official acted with a "sufficiently culpable state of mind." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). Therefore, "the Eighth Amendment does not apply to every deprivation, or even every unnecessary deprivation suffered by a prisoner, but *only* that narrow class of deprivations involving 'serious' injury inflicted by prison officials acting with a culpable state of mind." *Hudson v. McMillan*, 503 U.S. 1, 20 (1970) (emphasis original).

A serious medical condition is one that has been diagnosed by a physician as mandating treatment or that is so obvious that even a lay person would recognize the need for a doctor's attention. *Gaudreault v. Municipality of Salem, Mass.*, 923 F.2d 203, 208 (1st Cir. 1990), *cert.denied*, 500 U.S. 956 (1991). A medical condition is also serious if a delay in treatment causes a life-long handicap or permanent loss.

---

[4]The undersigned acknowledges that the Plaintiff relies on one Ninth Circuit decision to support his argument that § 233(a) does not preempt *Bivens* relief against a Public Health Service employee. *See Castaneda v. U.S.*, 546 F.3d 682 (2010). However, the Judgment in that case was reversed by *Hui v, Canstaneda*, 599 U.S. 799 (2010), and § 233(a) does, indeed, prohibit the Plaintiff's *Bivens* action against Defendant Groves.

*Monmouth County Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987), cert. denied, 486 U.S. 1006 (1988).[5]

The subjective component of a cruel and unusual punishment claim is satisfied by showing that the prison official acted with deliberate indifference. *Wilson*, 501 U.S. at 303. A finding of deliberate indifference requires more than a showing of negligence.

---

[5] The following are examples of what does or does not constitute a serious injury. A rotator cuff injury is not a serious medical condition. *Webb v. Prison Health Services*, 1997 WL 298403 (D. Kansas 1997). A foot condition involving a fracture fragment, bone cyst and degenerative arthritis is not sufficiently serious. *Veloz v. New York*, 35 F.Supp.2d 305, 312 (S.D.N.Y. 1999). Conversely, a broken jaw is a serious medical condition. *Brice v. Virginia Beach Correctional Center*, 58 F. 3d 101 (4th Cir. 1995); a detached retina is a serious medical condition. *Browning v. Snead*, 886 F. Supp. 547 (S.D. W. Va. 1995). Arthritis is a serious medical condition because the condition causes chronic pain and affects the prisoner's daily activities. *Finley v. Trent*, 955 F. Supp. 642 (N.D. W.Va. 1997). A pituitary tumor is a serious medical condition. *Johnson v. Quinones*, 145 F.3d 164 (4th Cir. 1998). A plate attached to the ankle, causing excruciating pain and difficulty walking and requiring surgery to correct it is a serious medical condition. *Clinkscales v. Pamlico Correctional Facility Med. Dep't.*, 2000 U.S. App. LEXIS 29565 (4th Cir. 2000). A tooth cavity can be a serious medical condition, not because cavities are always painful or otherwise dangerous, but because a cavity that is not treated will probably become so. *Harrison v. Barkley*, 219 F.3d 132, 137 (2d Cir. 2000). A prisoner's unresolved dental condition, which caused him great pain, difficulty in eating, and deterioration of the health of his other teeth, was held to be sufficiently serious to meet the *Estelle* standard. *Chance v. Armstrong*, 143 F.3d 698, 702 - 703 (2d Cir. 1998). A degenerative hip a serious condition. *Hathaway v. Coughlin*, 37 F.3d 63, 67 (2d Cir. 1994). Under the proper circumstances, a ventral hernia might be recognized as serious. *Webb v. Hamidullah*, 281 Fed. Appx. 159 (4th Cir. 2008). A twenty-two hour delay in providing treatment for inmate's broken arm was a serious medical need. Loe v. Armistead, 582 F.2d 1291, 1296 (4th Cir. 1978). A ten-month delay in providing prescribed medical shoes to treat severe and degenerative foot pain causing difficulty walking is a serious medical need. *Giambalvo v. Sommer*, 2012 WL 4471532 at *5 (S.D.N.Y. Sep. 19, 2012). Numerous courts have found objectively serious injury in cases involving injury to the hand, including broken bones. *See, e.g., Lepper v. Nguyen*, 368 F. App'x. 35, 39 (11th Cir. 2010); *Andrews v. Hanks*, 50 Fed. Appx. 766, 769 (7th Cir. 2002); *Bryan v. Endell*, 141 F.3d 1290, 1291 (8th Cir. 1998); *Beaman v. Unger*, 838 F.Supp.2d 108, 110 (W.D. N.Y. 2011); *Thompson v. Shutt*, 2010 WL 4366107 at *4 (E.D. Cal. Oct. 27, 2010); *Mantigal v. Cate*, 2010 WL 3365735 at *6 (C.D. Cal. May 24, 2010) *report and recommendation adopted,* 2010 WL 3365383 (C.D. Cal. Aug. 24, 2010); *Johnson v. Adams*, 2010 WL 1407787 at *4 (E.D. Ark. Mar. 8, 2010) report and recommendation adopted, 2010 WL 1407790 (E.D. Ark. Mar. 31, 2010); *Bragg v. Tyler*, 2007 WL 2915098 at *5 (D.N.J. Oct. 4, 2007); *Vining v. Department of Correction*, 2013 U.S. Dist. LEXIS 136195 at *13 (S.D.N.Y. 2013)(chronic pain arising from serious hand injuries satisfies the objective prong of Eighth Amendment deliberate indifference analysis). A three-day delay in providing medical treatment for an inmate's broken hand was a serious medical need. *Cokely v. Townley*, 1991 U.S. App. LEXIS 1931 (4th Cir. 1991).

*Farmer v. Brennan,* 511 U.S. 825, 835 (1994). A prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. A prison official is not liable if he "knew the underlying facts but believed (albeit unsoundly) that the risk to which the fact gave rise was insubstantial or nonexistent." *Id.* at 844.

"To establish that a health care provider's actions constitute deliberate indifference to a serious medical need, the treatment, [or lack thereof], must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990). A mere disagreement between the inmate and the prison's medical staff as to the inmate's diagnosis or course of treatment does not support a claim of cruel and unusual punishment unless exceptional circumstances exist. *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985). A constitutional violation is established when "government officials show deliberate indifference to those medical needs which have been diagnosed as mandating treatment, conditions which obviously require medical attention, conditions which significantly affect an individual's daily life activities, or conditions which cause pain, discomfort or a threat to good health." *See Morales Feliciano v. Calderon Serra*, 300 F.Supp.2d 321, 341 (D.P.R. 2004) (citing *Brock v. Wright*, 315 F.3d 158, 162 (2d Cir. 2003)).

As has been previously noted, the Plaintiff's complaint involves his medical care at FCI Gilmer on August 8, 2013. A cursory review of the Plaintiff's medical records establishes that he was diagnosed with essential hypertension and was prescribed Lisinopril 40 MG. ECF No. 40-7 at 76. On August 8, 2013, Defendant Grove entered a

clinical encounter in the Plaintiff's medical records. It notes that she was called to the Plaintiff's housing unit because he exhibited slurred speech and high blood pressure. The narrative, which establishes that she arrived at the housing unit at 7:15 AM states as follows:

> Arrived to housing unit. Inmates sitting on a chair in cell. Inmate complains of vomiting x 1 just prior to my arrival. Noted skin warm and clammy. Reports that he has not been feeling well for 3 days. Reports that he went to dental sick call three days ago and is to return for some kind of treatment. Inmate denies being on any antibiotic. Inmate reports that he has been unable to eat due to teeth problems. No slurred speech noted. Inmate assisted to first aid cart due to unsteady gait. During transport across the compound, inmate reports that he felt better, "I guess due to fresh air". Inmate assisted to triage room and vital signs taken. Noted blood pressure high. IPERRLA.[6] Afebrile. Inmate reports that he has not taken AM BP medications. Reports again that he has not been able to eat due to wisdom tooth discomfort on right side which is made him eat on the left side and now the left side of mouth has become sore. Notified dental department staff and was informed that inmate was seen at dental sick call a couple days ago and is scheduled for a deep scale cleaning due to large amount of plaque build-up. No cavities or infection noted at that time. Notified provider who came to triage room to assess inmate. Inmate again reports to provider about not being able to eat because of mouth discomfort. Inmate was reminded this was not dental sick call. Inmate was instructed to take blood pressure medication immediately on return to unit and to make sure to watch callouts for dental appt. Inmate voices understanding. Inmate taken back unit via cart due to gait slightly unsteady. Instructed inmate to inform staff if anything worsens. Voiced understanding.

ECF No. 40-7 at 66. Objective findings included that at 7:23 AM, the Plaintiff's BP was 197/122, and at 7:23 AM, it was 178/119. *Id.* at 65.

On August 8, 2013, another clinical encounter was placed in the Plaintiff's medical file by Christina Gherke, PA-C. His chief complaint was noted to be hypertension. Under subjective findings, Ms. Gherke noted:

---

[6]The undersigned believes this indicates that the inmate's pupils are equal, round, reactive to light, and accommodating.

> 47 yo African American male presents to the clinic today. He was seen earlier today for hypertension. Pt. was told at that time to return to his housing unit and take his blood pressure medication. He states that he did take it. Unit Counselor notified health services he was slurring his speech and that he was unable to walk in a straight line. 2 MLP[7] and 1 RN responded to the medical emergency. Upon arrival at the triage room his blood pressure was elevated. An 18 mm [guage] was placed in his right anticubital fossa and 2 L of oxygen was applied. There was no staff physician available for consult. EMS was contacted.

ECF No. 40-7 at 60. Under objective findings, Ms. Gherke noted at 1:27 PM, the Plaintiff's BP was 198/119, 197/113, 230/113, 210/110; at 1:41 PM it was 215/111 and at 1:49 PM it was 210/113. In addition his pulse was noted to range between a high of 76 and a low of 56 Id.

Accordingly, on the day in question, it is clear that the Plaintiff failed to take his morning BP medication. It is also clear that upon being notified by his housing unit staff that he was having difficulty, including slurred speech, he was immediately transported to and evaluated by the HSD. In addition, upon being alerted by his housing unit staff that same afternoon that he was slurring his speech and was unable to walk in a straight line, the Plaintiff was again transferred to and evaluated by the HSD. Because no staff physician was available for a consult, the EMS was called, and he was transported to a hospital.

Despite the Plaintiff's claim that staff at Stonewall Jackson Memorial Hospital determined that he was suffering from poorly maintained hypertensive urgency in a malignant state[8] and displayed indicative signs of a TIA, the medical records do not

---

[7] Mid-level practioner.

[8] Hypertensive urgency is defined as blood pressure greater than 180/120 in the absence of progressive target organ dysfunction. Patients with this diagnosis are often therapy-noncompliant. http://www.consultant360 Malignant hypertension is very high blood pressure that comes on suddenly and quickly. The lower (diastolic) blood pressure reading, which is

support that finding. Rather, his final discharge summary indicated a diagnosis of essential hypertension[9], poorly controlled; vertigo due to inner ear dysfunction; hiccoughs, constipation and apparent hypothyroidism. ECF No. 20-1 at 2. Moreover, he was discharged with instructions to take Lisinopril 40 MG, the same medication and dosage he had been taking at FCI Gilmer as well as Antivert for vertigo as needed, Chlorpromazine 25 mg as needed for hiccups; as well as other medications including fiber, doscusate, and Thorazine. ECF No. 40-8 at 90-91. The Plaintiff was advised to avoid caffeine, alcohol and tobacco use, gradually resume normal activities and return to the hospital if symptoms returned. Nothing in the discharge instructions supports a finding that the Plaintiff suffered any adverse affect from his medical treatment at FCI Gilmer on August 8, 2013.[10] Accordingly, there is nothing to support a finding that the Defendants were deliberately indifferent to his medical condition on August 8, 2013.

To the extent that the Plaintiff alleges that Dr. Anderson refused him immediate treatment on the morning of 8/8/2013 by failing to give him medication he alleges would have immediately corrected his blood pressure, he is simply stating his opinion. "Disagreements between an inmate and a physician over the inmate's proper medical

---

normally less than 80 mmHg, is often above 130 mmHg. http://ww.nytimes.com

[9]Hypertension is the term used to describe high blood pressure. Essential hypertension means the cause of high blood pressure is not known. http://www.nytimes

[10]The undersigned is aware that the Plaintiff alleges that he suffered substantial weight loss as a result of this incident. The Plaintiff is 67" tall [ECF No. 40-6 at 57], and his medically recommended wight is 121-160 pounds. ECF No. 40-6 at 1. His documented weight has fluctuated from 203 pounds on March 24, 2010, to a low of 165 pounds on 10/28/2014. By February 23, 2016, he was back up to 203 pounds. Accordingly, his documented weight has never been within the recommended range, and the undersigned suspects that any weight fluctuations may be attributable to his diabetes, for which he now takes insulin and efforts to control his hypertension by maintaining a healthy weight.

care does not state a [Bivens] claims unless exceptional circumstances are alleged." *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985). Moreover, courts should not "second-guess the propriety or adequacy of a particular treatment. Along with all other aspects of health case, this remains a question of sound professional judgment." *Bowring v. Godwin*, 551 F.2d 44, 48 (4th Cir. 1977.<u>disagreements</u> regarding the course of treatment do not establish an Eighth Amendment violation. Finally, [o]nly the 'unnecessary *and wanton* infliction of pain' implicates the Eighth Amendment." *Wilson v. Seiter*, 501 U.S. 294, 297 (1991) (emphasis original). Here, the Plaintiff only alleges that his medical care was inadequate. "[I]n the medical context, an inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain." *Estelle*, 429 U.S. at 106 (quotations omitted). Therefore, the Plaintiff cannot establish deliberate indifference in violation of his Eighth Amendment rights.[11]

## V.    RECOMMENDATION

For the foregoing reasons, the undersigned recommends that Defendant Grove be **DISMISSED** because she is an officer in the Public Health Service and is immune from liability in a <u>Bivens</u> action; the Defendants' Motion to Dismiss or for Summary Judgment [ECF No. 39] be **GRANTED** because the Plaintiff has failed to establish an Eighth Amendment violation**;** and this matter be **DISMISSED WITH PREJUDICE** for failure to state a claim upon which relief can be granted. The undersigned further

---

[11]To the extent that the Plaintiff is alleging negligence, "[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle v. Gamble*, 429 U.S. 97, 105 (1976). The undersigned notes that the Plaintiff has a pending complaint pursuant to the Federal Tort Claim Act, which is the proper remedy for allegations of negligence on the part of federal employees.

recommends that the Plaintiff's Motion to Appoint Counsel [ECF No. 51] be **DENIED AS MOOT**.

Within fourteen days after being served with a copy of this report and recommendation, any party may file with the Clerk of Court written objections identifying those portions of the recommendation to which objection is made and the basis for such objections. A copy of any objections shall also be submitted to the United States District Judge. Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such recommendation. 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985): *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

The Clerk is **DIRECTED** to mail a copy of this Report and Recommendation to the *pro se* petitioner by certified mail, return receipt requested, to his last known address as shown on the docket. The Clerk is further **DIRECTED** to provide a copy to counsel of record via electronic means.

DATED: February 6, 2017

*/s Michael John Aloi*
MICHAEL JOHN ALOI
UNITED STATES MAGISTRATE JUDGE